NMA:LKG/KDE
F.#2017R00242

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    17 CR 127 (ARR)

        - against -

VINCENT ASARO,
JOHN J. GOTTI,
MICHAEL GUIDICI and
MATTHEW RULLAN,
        also known as "Fat Matt,"

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X


THE GOVERNMENT'S REQUEST TO CHARGE


                                    BRIDGET M. ROHDE
                                    Acting United States Attorney
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201


Nicole M. Argentieri
Lindsay K. Gerdes
Keith D. Edelman
Assistant U.S. Attorneys
        (Of Counsel)

## PRELIMINARY STATEMENT

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the government requests that the Court include the following instructions in its charge to the jury.    In addition, the government requests leave to offer amended or additional instructions as may become appropriate during the course of the trial.

REQUEST NO. 1

<u>GENERAL REQUESTS</u>

The government requests that the Court charge the jury in its usual manner on the

following subjects:

1.  The Role of the Court and the Duties of the Jury;

2.  Equality of the Parties Before the Court;

3.  Jury Communications with Lawyers and the Court;

4.  "And" Means "Or";

5.  Presumption of Innocence;

6.  Burden of Proof and Reasonable Doubt;

7.  Circumstantial Evidence and Direct Evidence;

8.  Function of the Indictment and What is Not Evidence;

9.  Permissible Inferences Drawn from the Evidence;

10.  Stipulations and Objections;

11.  Redacted Exhibits Appropriate;

12.  Prior Inconsistent Statements;

13.  Testimony of Government Agents and Law Enforcement Witnesses;

14.  Immunity of Government Witnesses (if applicable);

15.  Credibility of Witnesses;

16.  Expert Witnesses;

17.  No Inference to Be Drawn from the Defendant's Failure to Testify (if applicable);

18.  Deliberations;

19.  Right to See Exhibits and Have Testimony Read During Deliberations;

20.   Questioning Wisdom of Law and Basing Verdict on Sympathy or Prejudice Prohibited; and

21.   Venue.

REQUEST NO. 2

SUMMARY OF INDICTMENT

The defendants are formally charged in an indictment ("Indictment"), which I will simply call the Indictment. As I instructed you at the outset of this case, an indictment is a charge or accusation. The Indictment in this case contains four separate counts, or charges. You will be called upon to render a separate verdict on each count. Let me now give you a summary of the Indictment.

Counts One and Two relate to arson. Count One charges that on or about and between April 1, 2012 and April 4, 2012, defendants VINCENT ASARO, JOHN J. GOTTI and MATTHEW RULLAN, together with others, conspired to maliciously damage or destroy a vehicle, by means of fire or explosives. Count Two charges that on or about and between April 1, 2012 and April 4, 2012, defendants ASARO, GOTTI and RULLAN, together with others, attempted to maliciously damage or destroy a vehicle, by means of fire or explosives and that they actually did so.

Counts Three and Four relate to bank robbery. Count Three charges that on or about and between March 15, 2012 and April 18, 2012, defendants GOTTI, RULLAN and FRANK GUIDICI, together with others, conspired to take by force, violence and intimidation money from Maspeth Federal Savings and Loan Association. Count Four charges that on or about April 18, 2012, GOTTI, RULLAN and GUIDICI took by force, violence and intimidation money from Maspeth Federal Savings and Loan Association.

REQUEST NO. 3

KNOWLEDGE AND INTENT

Because the indictment charges four separate counts, and because all of the charges implicate the concepts of knowledge and intent, I will tell you up front about those concepts before addressing the charges specifically.

A person acts "knowingly" when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness. Whether a defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when he acts deliberately and purposefully. That is, a defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.

A person acts "willfully" when he acts voluntarily, intentionally, and with a purpose; in this case, a purpose to do something that the law forbids.

REQUEST NO. 4

## AIDING AND ABETTING

The indictment alleges that the defendant aided and abetted the commission of

particular crimes and racketeering acts.   I will instruct you on the law of aiding and abetting

before addressing the specific crimes charged in the indictment.

Aiding and Abetting Under Federal Law

The federal aiding and abetting statute – Section 2 of Title 18 of the United States

Code – provides as follows:

> Whoever commits an offense against the United States or aids,
> abets, counsels, commands, induces or procures its commission, is
> punishable as a principal.

> Whoever willfully causes an act to be done which if directly
> performed by him or another would be an offense against the
> United States, is punishable as a principal.

This means that if you find that the defendant knowingly and willfully aided and abetted another

person in the commission of a crime, he is as guilty as if he personally committed it.

Before you can convict the defendant on the ground that he aided and abetted the

commission of the crimes charged, you must first find that another person committed that crime.

No one can be convicted of aiding and abetting the criminal acts of another if no crime was

committed by the other person in the first place.   But if you do find that a crime was committed,

then you must determine whether the defendant aided or abetted the commission of that crime.

In order for a defendant to be guilty of aiding and abetting, it is necessary that

there be more than mere knowledge that a crime is being committed and acquiescence in the

crime itself.   A defendant must have willfully associated himself in some way with the criminal

venture and must have willfully participated in it as something he wanted to bring about.   That

is, a defendant must willfully seek by some act to make the criminal venture succeed.   As I just instructed you, a person acts willfully if he participates voluntarily and intentionally; that is, with a bad purpose to do something the law forbids.   Mere presence or relationship to the person who actually committed the crime – even coupled with knowledge that a crime was committed – is not enough.

To determine whether the defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.   If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty under that theory.

<u>Authority</u>

Adapted from jury charge in <u>United States v. Basciano</u>, 03 CR 929 (NGG) (E.D.N.Y.)

REQUEST NO. 5

COUNT TWO: ARSON

I will begin with the law relating to Count Two of the Indictment, which charges defendants ASARO, GOTTI and RULLAN with arson, in violation of Title 18, United States Code, Section 844(i).

Count Two of the indictment reads as follows:

On or about and between April 2, 2012 and April 4, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants VINCENT ASARO, JOHN J. GOTTI and MATTHEW RULLAN, also known as "Fat Matt," together with others, did knowingly and intentionally and maliciously damage and destroy, and attempt to damage and destroy, by means of fire and an explosive, a vehicle used in interstate and foreign commerce and in an activity affecting interstate and foreign commerce.

In order to establish that a defendant committed arson, the government must prove beyond a reasonable doubt the following three elements:

First, that the defendant set a fire to damage or destroy, or in an attempt to damage or destroy, property;

Second, that the property was used in or affecting interstate commerce; and

Third, that the defendant acted maliciously.

I will now give you some more detailed instructions regarding these elements.

The first element the Government must prove beyond a reasonable doubt is that the defendant, by means of fire or explosive, damaged or destroyed, or attempted to damage or destroy, property, in this case, a vehicle.

If you find therefore that a defendant damaged or destroyed the vehicle, or attempted to damage or destroy the vehicle, by means of fire, the first element of the offense is satisfied.

The second element of the offense, which the government must prove beyond a reasonable doubt, is that the property which was damaged or destroyed, the vehicle in this case, was property used in or affecting interstate commerce.

"Interstate commerce" means commerce which affects more than one state. It includes commercial activity between any place in one state and another place outside that state. It also includes commercial activity wholly within one state but which has a substantial effect on commerce between or among the states. For example, if the property was used for the sale of merchandise, including food or drink, which had moved in interstate commerce, it would be used in interstate commerce. I instruct you that the leasing market for vehicles is a national one that materially affects interstate commerce.

The government does not have to prove that the materials used to destroy or damage the vehicle moved at some point in interstate commerce. The government also does not have to prove that the defendant knew that the vehicle was used in or affected interstate commerce.

If you find, therefore, that the government has proven beyond a reasonable doubt that the property in question comes within the definition of "property used in or affecting interstate commerce" as I have just described it to you, the second element of the offense is satisfied.

[If applicable: In this case, both sides have stipulated that the vehicle in question was a leased vehicle at all times relevant to this case, and that the fact that the vehicle was subject to a lease means that the vehicle was 'used in' an activity affecting interstate commerce under

844(i).]

The third element which the government must prove beyond a reasonable doubt is that the defendant acted with malicious intent.

To act with malicious intent means to act either intentionally or with willful disregard of the likelihood that damage will result, and not mistakenly or carelessly. In order to find the defendant guilty you must find that the defendant set the fire with the intent to cause damage, or that he did so recklessly and without regard to the likelihood that such damage would result.

### *Aiding and Abetting*

Count Two is also charged under an aiding and abetting theory—that is, that the defendant aided and abetted arson. I have already instructed you on aiding and abetting under federal law. When deliberating on Count Two, apply those instructions.

Authority

Jones v. United States, 529 U.S. 848, 865 (2000); Russell v. United
States, 471 U.S. 858, 862 (1985); United States v. Iodice, 525 F.3d
179, 183 (2d Cir. 2008); United States v. Barton, 647 F.2d 224 (2d
Cir. 1981); McFadden v. United States, 814 F.2d 144 (3d Cir. 1987);
Modern Federal Jury Instructions -- Criminal P 30.01.

REQUEST NO. 6

<u>COUNT ONE: ARSON CONSPIRACY</u>

I will now instruct you on the law regarding Count One.   Count One charges

defendants ASARO, GOTTI and RULLAN with conspiring to commit the crime charged in

Count Two, that is, arson.

Count One of the indictment reads as follows:

> On or about and between April 2, 2012 and April 4, 2012, both dates
> being approximate and inclusive, within the Eastern District of New York
> and elsewhere, the defendants VINCENT ASARO, JOHN J. GOTTI and
> MATTHEW RULLAN, also known as "Fat Matt," together with others,
> did knowingly and willfully conspire to maliciously damage and destroy,
> by means of fire and an explosive, a vehicle used in interstate and foreign
> commerce and in an activity affecting interstate and foreign commerce.

I have already instructed you that Title 18, United States Code, Section 844(i)

makes it a crime for any person to commit arson.   Title 18, United States Code, Section 844(n)

makes it a crime for any person to conspire to commit the crime defined by Section 844(i), that is,

the crime of arson.

The conspiracy to commit a crime is an entirely separate and different offense from

the underlying crime the conspirators intend to commit.   Forming a conspiracy -- a partnership

for criminal purposes -- is itself unlawful.   At the heart of the crime of conspiracy is an agreement

or understanding by two or more persons to violate the law.   If a conspiracy exists, even if it

should fail to achieve its unlawful purpose, it is still punishable as a crime. Consequently, for the

defendant to be guilty of conspiracy, there is no need for the government to prove that the

defendant or any other conspirator actually succeeded in his criminal goals.

In order to sustain its burden of proof with respect to the conspiracy charged in

Count One of the Indictment, the government must prove beyond a reasonable doubt the following

elements:

     <u>First</u>, the existence of the conspiracy charged in Count One; in other words, that there was, in fact, an agreement or understanding to violate the law prohibiting arson.

     Therefore, the first question for you is: did the conspiracy alleged in Count One of the Indictment exist?   Was there such a conspiracy?

     <u>Second</u>, the government must prove beyond a reasonable doubt that the defendant knowingly became a member of the conspiracy; that is, that the defendant knowingly associated himself with the conspiracy, and participated in the conspiracy to commit arson.

### *The Existence of the Conspiracy*

     A conspiracy is an agreement or understanding, between two or more persons, to accomplish by joint action a criminal or unlawful purpose.   In Count One, the unlawful purpose alleged to be the object of the conspiracy is arson.

     The gist, or the essence, of the crime of conspiracy is the unlawful agreement between two or more people to violate the law.   As I mentioned earlier, the ultimate success of the conspiracy, of the actual commission of the crime that is the object of the conspiracy, is not required.

     The conspiracy alleged here, therefore, is the *agreement* to commit arson.   It is an entirely distinct and separate offense from the *actual* commission of arson.

     In order to show that a conspiracy existed, the evidence must show that two or more persons, in some way or manner, either explicitly or implicitly, came to an understanding to violate the law and to accomplish an unlawful plan.

     Now, to show a conspiracy existed, the government is not required to show that two or more people sat around a table and entered into a solemn pact, orally or in writing, stating that

12

they had formed a conspiracy to violate the law and spelling out all the details. Common sense tells you that when people, in fact, agree to enter into a criminal conspiracy, much is left to an unexpressed understanding. It is rare that a conspiracy can be proven by direct evidence of an explicit agreement.

In determining whether there has been an unlawful agreement as alleged, you may consider the acts and the conduct of the alleged co-conspirators that were done to carry out the apparent criminal purpose. Often, the only evidence that is available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the part of the alleged individual co-conspirators. When taken all together and considered as a whole, however, those acts and conduct may warrant the inference that a conspiracy existed as conclusively as would direct proof.

So you must first determine whether or not the proof established beyond a reasonable doubt the existence of the conspiracy as charged in Count One of the Indictment. In considering this first element, you should consider all the evidence which has been admitted with respect to the conduct and statements of each alleged co-conspirator and such inferences as may be reasonably drawn from them. It is sufficient to establish the existence of the conspiracy, as I've already said, if, from the proof of all the relevant facts and circumstances, you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in an understanding to accomplish, by the means alleged, the object of the conspiracy.

The object of a conspiracy is the illegal goal the co-conspirators agreed upon or hoped to achieve. Count One of the Indictment charges that the object of the conspiracy was to commit arson. In instructing you on Count Two of the Indictment, which charges the substantive crime of arson, I have already described for you the elements of arson.

If you find that the conspiracy had the charged objective, the illegal purpose element will be satisfied.

### *Membership in the Conspiracy*

If you conclude that the government has proven beyond a reasonable doubt that the conspiracy charged in Count One of the Indictment existed, and that the conspiracy had as its object the illegal purpose charged in the Indictment, then you must next answer the second question: whether the defendant participated in the conspiracy with knowledge of its unlawful purpose, and in furtherance of its unlawful objective.

The government must prove beyond a reasonable doubt that the defendant knowingly and intentionally entered into the conspiracy with a criminal intent—that is, with a purpose to violate the law—and that the defendant willfully agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

The terms "unlawfully," "willfully" and "knowingly and intentionally" are intended to ensure that if you find that the defendant did join the conspiracy, you also conclude beyond a reasonable doubt that, in doing so, he knew what he was doing; in other words, that he took the actions in question deliberately and voluntarily.

"Unlawfully" simply means contrary to law. The defendant need not have known that he was breaking any particular law, but he must have been aware of the generally unlawful nature of his acts.

I will remind you, an act is done "willfully" if it is done voluntarily, intentionally, and with a purpose; in this case, a purpose to do something that the law forbids.

An act is done "knowingly and intentionally" if it is done deliberately and purposefully; that is, the defendant's acts must have been the product of the defendant's conscious

objective, rather than the product of a mistake or accident, or mere negligence, of some other innocent reason.

Now, science has not yet devised a manner of looking into a person's mind and knowing what that person is thinking. However, you do have before you the evidence of certain acts and conversations alleged to have taken place with the defendant. The government contends that these acts and conversations show, beyond a reasonable doubt, the defendant's knowledge of the unlawful purpose of the conspiracy.

It is for you to determine whether the government has established to your satisfaction, beyond a reasonable doubt, that such knowledge and intent on the part of the defendant existed.

It is not necessary for the government to show that the defendant was fully informed as to all the details of the conspiracy in order for you to infer knowledge on his part. To have guilty knowledge, a defendant need not know the full extent of the conspiracy, of all of the activities of all its participants. It is not even necessary for a defendant to know every other member of the conspiracy. In fact, a defendant may know only one other member of the conspiracy and still be a co-conspirator. Nor it is necessary for a defendant to receive any monetary benefit from his participation in the conspiracy, or to have a financial stake in the outcome. It is enough if he participated in the conspiracy unlawfully, willfully and knowingly, as I have defined those terms for you.

The duration and extent of a defendant's participation has no bearing on the issue of the defendant's guilt. He need not have joined the conspiracy at the outset. He may have joined it at any time in its progress, and he will still be held responsible for all that was done before he joined and all that was done during the conspiracy's existence while he was a member.

Each member of a conspiracy may perform separate and distinct acts. Some conspirators play major roles, while others play minor roles in the scheme. An equal role is not what the law requires. In fact, even a single act may be sufficient to draw a defendant within the scope of the conspiracy.

However, I want to caution you that a person's mere association with a member of a conspiracy does not make that person a member of the conspiracy, even when that association is coupled with knowledge that a conspiracy is taking place. Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not sufficient to support a conviction. In other words, knowledge without agreement and participation is not sufficient. What is necessary is that the defendant participated in the conspiracy with knowledge of its unlawful purpose, and with an intent to aid in the accomplishment of its unlawful objectives.

In sum, the defendant, with an understanding of the unlawful nature of the conspiracy, must have intentionally engaged, advised or assisted in the conspiracy for the purpose of furthering an illegal undertaking. The defendant thereby became a knowing and willing participant in the unlawful agreement—that is to say, a conspirator.

Authority

Adapted from the jury charge given in <u>United States v. Tian Si Lu</u>, 01 CR 38 (JGK)(S.D.N.Y.); <u>United States v. Rios</u>, S.D.N.Y., 91 CR 914 (LBS); and from Sand, <u>Modern Federal Jury Instructions</u>, Instruction 19-3, 19-6 & 56-18.

REQUEST NO. 7

<u>COUNT FOUR: BANK ROBBERY</u>

As I did with the arson, I will give you the law on the substantive crime of bank robbery first, and then I will instruct you on bank robbery conspiracy.    Count Four of the Indictment charges defendants GOTTI, GUIDICI and RULLAN with the substantive crime of bank robbery, in violation of Title 18, United States Code, 2113(a).

Count Four of the Indictment reads as follows:

On or about April 18, 2012, within the Eastern District of New York, the defendants JOHN J. GOTTI, MICHAEL GIUDICI and MATTHEW RULLAN, also known as "Fat Matt," together with others, did knowingly and intentionally take by force, violence and intimidation, from the person and presence of one or more employees of Maspeth Federal Savings and Loan Association, 56-18 69th Street, Maspeth, New York, money in the care, custody, control, management, and possession of said savings and loan association, the deposits of which were insured by the Federal Deposit Insurance Corporation.

In order to establish that the defendant committed bank robbery, the government must prove beyond a reasonable doubt the following five elements:

<u>First</u>, that, on April 18, 2012, the Maspeth Federal Savings and Loan Association, which I will refer to as the bank, was insured by the Federal Deposit Insurance Corporation;

<u>Second</u>, the defendant took money from the bank, which money or thing of value belonged to or was in the care, custody, control, management or possession of that bank;

<u>Third</u>, the defendant took the money from the person or in the presence of another;

<u>Fourth</u>, the defendant did accomplish this taking, by force and violence or by acting in an intimidating manner; and

<u>Fifth</u>, that the defendant acted knowingly and intentionally.

17

The first element of bank robbery, which the Government must prove beyond a reasonable doubt, is that the bank alleged in the Indictment was a bank within the meaning of the federal bank robbery statute on or about the date alleged in Count Four.   The federal bank robbery statute defines the term "bank" to include any savings and loan association, whose deposits are insured by the Federal Deposit Insurance Corporation.

[If applicable:   In this case, both sides have stipulated that Maspeth Federal Savings and Loan Association is a savings and loan association, the deposits of which were insured by the Federal Deposit Insurance Corporation at all times relevant to this case.]

The second element that the Government must prove is that the defendant took money that belonged to or was in the care, custody, control, management or possession of the bank from the person or in the presence of another.

The words care, custody, control, management, and possession express the idea that the bank had control over or responsibility for the money.   For example, money that is in the bank's vault is in the possession of the bank.   When employees control money through the performance of their jobs, the bank is in possession and control of that money.   Therefore, the money in the control of bank tellers is property that is in the control of the bank.   Property is in the "care" of the bank if the bank has made a commitment to guarantee the security or safety of the property.

The third element the Government must prove is that the money was taken from a person or in the presence of another.

The fourth element that the Government must prove is that the taking involved force or violence or acting in an intimidating manner.   Force and violence have their everyday meanings and require no further elaboration.   The Government can satisfy this element by proving beyond

a reasonable doubt that the taking involved intimidation—that is, placing another person or persons in fear. In other words, the Government must prove that the defendant attempted to use force and violence OR attempted to use intimidation; the Government need not prove both. Intimidation may be established by proof of circumstances that are normally and reasonably calculated to arouse fear in ordinary human beings. Therefore, to prove intimidation, the Government must prove that the defendant attempted to say or do something during the course of the robbery that would make an ordinary person fear bodily harm.

Your focus should be on the behavior of the defendant. Although the Government does not have to show that the behavior of the defendant caused, or could have caused, terror, panic, or hysteria, the Government does have to show that an ordinary person in the position of the bank employees, security guards, or customers at the time of the attempted robbery would have feared bodily harm because of what the defendant was attempting to do or say.

The question for your determination is an objective one: whether the Government has sustained its burden of showing that the conduct of the defendant constituted attempted use of force and violence or attempted to provide an expectable basis for the creation of fear.

As to the fifth element, that the defendant acted knowingly and intentionally, I have previously instructed you on those terms. The same definitions apply.

### *Aiding and Abetting*

You may find a defendant guilty of Count Four without finding that a particular defendant entered the bank to commit the robbery. This is because Count Four also alleges that

the defendants aided and abetted each other in the commission of a bank robbery.   I have

already explained the concept of aiding and abetting.

Authority

Adapted from 2 L. Sand et al., Modern Federal Jury Instructions ¶ 53, from United States v. Gideon Leaks, 89 CR 607 (JAW) (January 9, 1990), and from United States v. McLaughlin, 476 U.S. 16, 17-18 (1986).

## COUNT THREE: BANK ROBBERY CONSPIRACY

I will now turn to the language of Count Three, bank robbery conspiracy.   Count Three charges defendants GOTTI, RULLAN and GUIDICI with participating in a conspiracy to violate the laws of the United States.

Count Three of the Indictment reads as follows:

> On or about and between March 15, 2012 April 18, 2012, within the Eastern District of New York, the defendants John J. Gotti, Michael Guidici and Matthew Rullan, also known as "Fat Matt," together with others, did knowingly and willfully conspire to take by force, violence and intimidation, from the person and presence of one or more employees of Maspeth Federal Savings and Loan Association, 56-18 69th Street, Maspeth, New York, money in the care, custody, control, management, and possession of said savings and loan association, the deposits of which were insured by the Federal Deposit Insurance Corporation.

The Indictment then lists overt acts that are alleged to have been committed in furtherance of the conspiracy, as well as the particular statute alleged to have been violated.   As I said before, the defendants are charged with having been members of a conspiracy to violate federal law.

I have previously defined conspiracy for you and told you that the government must prove two elements—the existence of the conspiracy and the defendant's membership in the conspiracy.   The government must prove those same two elements here.   In addition, for Count Three, the government must prove a third element—an overt act in furtherance of the conspiracy.   The government must prove beyond a reasonable doubt that at least one overt act was committed in furtherance of the conspiracy by at least one of the co-conspirators in the Eastern District of New York.

The purpose of the overt act requirement is clear. There must have been something more than mere agreement; some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.

The overt acts are set forth in the Indictment, which alleges:

> On or about April 18, 2012, the defendants JOHN J. GOTTI, MICHAEL GUIDICI and MATTHEW RULLAN, also known as "Fat Matt," drove to the Bank; and

> On or about April 18, 2012, the defendant MICHAEL GUIDICI entered the Bank and presented to a bank teller a note that, among other things, demanded money and stated "I HAVE A BOMB."

You may find that overt acts were committed which were not alleged in the Indictment. The only requirement is that one of the members of the conspiracy has taken some step or action in furtherance of the conspiracy in the Eastern District of New York during the life of the conspiracy.

Let me put it colloquially. The overt act element is a requirement that the agreement went beyond the mere talking stage, the mere agreement stage. The requirement of an overt act is a requirement that some action be taken during the life of the conspiracy by one of the co-conspirators to further the conspiracy.

In order for the Government to satisfy the overt act requirement, it is not necessary for the Government to prove all of the overt acts alleged in the Indictment. Nor must you find that the defendant in this case committed the overt acts alleged. It is sufficient for the Government to show that either the defendant or one of his alleged co-conspirators knowingly committed an overt act in furtherance of the conspiracy. Remember, the act of any one of the members of a conspiracy, done in furtherance of the conspiracy, becomes the act of all the other members. To be a member of the conspiracy, it is not necessary for a defendant to commit an overt act.

You should bear in mind that the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme. You are therefore instructed that the overt act does not have to be an act which in and of itself is criminal or constitutes an objective of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the Indictment. It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated, as long as it occurred while the conspiracy was still in existence.

<u>Authority</u>

Adapted from the jury charge given in <u>United States v. Rios</u>, 91 CR 914 (LBS) (S.D.N.Y.).

REQUEST NO. 9

DATES APPROXIMATE

In alleging dates, the indictment frequently charges "in or about," "on or about," or "between" certain dates. The proof need not establish with certainty the exact date of an alleged offense.   It is sufficient if the evidence establishes beyond a reasonable doubt that an offense was committed on a date reasonably near the date alleged.

Authority

Sand, Modern Federal Jury Instructions, Inst. 3-12; United States v. Brown, 79 F.2d 321 (2d Cir. 1955)

REQUEST NO. 10

<u>TIME OF CONSPIRACY</u>

The Indictment charges that the conspiracy charged in Count One existed from April 1, 2012 and April 4, 2012 and the conspiracy charged in Count Three existed from March 15, 2012 and April 18, 2012, with the dates being approximate and inclusive. It is not essential that the Government prove that the conspiracy started and ended on those specific dates. Indeed, it is sufficient if you find that in fact a conspiracy was formed and that it existed for some time within the period set forth in the Indictment, and, in the case of the bank robbery, that at least one overt act was committed in furtherance of the conspiracy within that period.

<u>Authority</u>

Adapted from the jury charge in <u>United States v. Carrero</u>, 91 CR 365 (JFK) (S.D.N.Y.).

REQUEST NO. 11

<u>INTERVIEWS OF WITNESSES</u>

There was testimony at trial that the attorneys for the government and the defense interviewed witnesses when preparing for and during the course of the trial. You should not draw any unfavorable inference from that testimony. To the contrary, the attorneys were obliged to prepare this case as thoroughly as possible and might have been derelict in the performance of their duties if they failed to interview witnesses before this trial began and as necessary throughout the course of the trial.

<u>Authority</u>

Adapted from jury charge given in <u>United States v. Young Taek Lee</u>, 93 CR 1072 (ILG) (E.D.N.Y.).

REQUEST NO. 12

## DISCREPANCIES IN TESTIMONY

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited. People sometimes forget things, and even a truthful witness may be nervous and contradict himself or herself. It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance. A willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

Authority

Quock Ting v. United States, 140 U.S. 417 (1891).

REQUEST NO. 13

<u>COOPERATING WITNESSES CALLED BY THE GOVERNMENT</u>

You heard testimony of several witnesses who pleaded guilty to certain crimes pursuant to cooperation agreements with the government. These witnesses testified that they were involved in planning and carrying out certain crimes with the defendant. There has been a great deal said about these so-called "cooperating witnesses" in the summations of counsel and about whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them. It argues that only people who themselves take part in criminal activity have the knowledge required to show the full extent of criminal behavior by others. For those very reasons, the law allows the use of accomplice testimony. Indeed, it is the law in federal courts that the testimony of one accomplice is enough in itself for conviction if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that testimony of cooperating witnesses is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe. I have given you some general considerations on credibility and I will not repeat them all here. Nor will I repeat all of the arguments made on both sides. However, let me say a few things that you may want to consider during your deliberations on the subject of cooperating witnesses.

You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth. Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely? Or did they believe that their interests would be best served by testifying truthfully? If you believe that a cooperating

witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth?   Did this motivation color his testimony?   In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the testimony of these cooperating witnesses.


<u>Authority</u>

Adapted from jury charges given in <u>United States v. Basciano</u>, 05 CR 060 (NGG) (E.D.N.Y.); <u>United States v. Bernard</u>, 625 F.2d 854 (9th Cir. 1980); <u>United States v. Garcia</u>, 528 F.2d 580 (5th Cir. 1976); <u>United States v. Owens</u>, 460 F.2d 268 (10th Cir. 1972); <u>Tillery v. United States</u>, 411 F.2d 644 (5th Cir. 1969).

REQUEST NO. 14

PUNISHMENT OF COOPERATING WITNESSES

Certain of the cooperating witnesses in this case were promised that if they testify truthfully, completely and fully, they will receive a 5K.1 letter from the government. Upon such a motion by the government stating that such a witness has provided substantial assistance in the investigation or prosecution of another person who has committed a crime, the Court may impose sentences below the minimum recommended sentence or the statutory sentence. Two factors to keep in mind are: (1) only the government can make such a motion and it cannot be compelled to do so; and (2) the Court has complete discretion as to whether it will or will not grant that motion and is free, in any event, to impose any sentence between the minimum and maximum set forth in the controlling statute. In addition, the sentence will be based on many factors, and the witness's cooperation is just one such factor. The final determination as to the sentence to be imposed on the witness is made by the Court alone.

Authority

Adapted from the jury charge given in United States v. Basciano, et al., 03 CR 929 (NGG) (E.D.N.Y.)

REQUEST NO. 15

## WITNESS WITH AGREEMENT

You have heard the testimony of a witness who testified under an agreement with the government.  Under this agreement, the witness agreed to testify in return for an agreement by the government not to prosecute the witness.

The government is permitted to enter into such agreements.  You, in turn, may accept the testimony of such witness and convict the defendant on the basis of this testimony alone, if the testimony convinces you of the defendant's guilt beyond a reasonable doubt.

Nevertheless, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from an ordinary witness.  A witness who realizes that he may be able to avoid prosecution for his crimes may have a motive to testify falsely.  Therefore, you must scrutinize his testimony with caution and weigh it with great care.

You should ask yourselves whether this witness would benefit more by lying, or by telling the truth.  Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment of any kind by testifying falsely?  Or did he believe that his interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause him to lie, or was it one which would cause him to tell the truth?  Did this motivation color his testimony?  If, after examining his testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

Authority

Adapted from the jury charge given in United States v. Demetrios,
95 CR 588 (RJD) (E.D.N.Y).

REQUEST NO. 16

## ALL AVAILABLE WITNESSES AND EVIDENCE NEED NOT BE PRODUCED

The law does not require the government to produce all available evidence or to call as witnesses all persons involved in the case who may have been present at any time or place, or who may appear to have some knowledge of the matters at issue at this trial. Similarly, the law does not require any party to produce as exhibits all papers and objects mentioned during the course of the trial. Your concern is to determine, based upon all the evidence presented in the case, whether or not the government has proven that the defendant is guilty beyond a reasonable doubt.

Authority

Adapted from the jury charge given in United States v. Basciano,
05 CR 060 (NGG) (E.D.N.Y.)

REQUEST NO. 17

<u>UNCALLED WITNESSES EQUALLY AVAILABLE</u>
(If Applicable)

Although the burden of proof rests exclusively with the government, each party had an equal opportunity or lack of opportunity to call as witnesses any of the individuals who were mentioned during the trial. You should, however, remember that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

<u>Authority</u>

Adapted from the jury charge given in <u>United States v. Curanovic</u>, 08 CR 240 (BMC) (E.D.N.Y.)

REQUEST NO. 18

OTHER PERSONS NOT ON TRIAL

You have heard evidence about the involvement of certain other people in the offenses referred to in the indictment. You may not draw any inference, favorable or unfavorable, towards the government or the defendants from the fact that certain persons are not on trial before you.   That these individuals are not on trial before you is not your concern. You also should not speculate as to the reason these people are not on trial before you, nor should you allow their absence as parties to influence in any way your deliberations in this case. You should not draw any inference from the fact that any other person is not present at this trial. Your concern is solely the defendant on trial before you.

Authority

Adapted from the jury charge given in <u>United States v. Curanovic,</u> 08 CR 240 (BMC) (E.D.N.Y.)

REQUEST NO. 19

## BASING VERDICT ON SYMPATHY IS IMPERMISSIBLE

Under your oath as jurors you are not to be swayed by sympathy for one side or the other.   You are to be guided solely by the evidence in this case, and the crucial question that you must ask yourselves as you sift through the evidence is: Has the government proven the guilt of the defendant beyond a reasonable doubt?

It is for you alone to decide whether the government has proven that the defendant is guilty of the crimes charged solely on the basis of the evidence and under the law as I charge you.   It must be clear to you that, once you let fear or prejudice or bias or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.

If you have a reasonable doubt as to the defendant's guilt, you must find a verdict of acquittal.   But on the other hand, if you should find that the government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

Authority

Adapted from Sand, Modern Federal Jury Instructions,
Instruction No. 2-12.

REQUEST NO. 20

<u>PUNISHMENT SHOULD NOT BE CONSIDERED</u>

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations.   The duty of imposing sentence rests exclusively upon the court.   Your function is to weigh the evidence in the case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.   Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon the defendant, if he is convicted, to influence your verdict in any way, or enter into your deliberations in any sense.

The punishment provided by law for this crime is for the court to decide.   You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt.

<u>Authority</u>

Adapted from the jury charge given in <u>United States v. Wapnik</u>, 92 CR 419 (E.D.N.Y.).

REQUEST NO. 21

## IMPROPER CONSIDERATIONS

Your verdict must be based solely upon the evidence developed at trial, or the lack of evidence. It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any sympathy or favor for one side or the other or any personal feelings that you may have about the defendant's race, religion, national origin, ethnic background, gender, or age. All persons are entitled to the presumption of innocence.

It would be equally improper for you to allow any feelings that you might have about the nature of the crimes charged to interfere with your decision-making process. To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence relating to the crimes charged in this case. The question of possible punishment is also of no concern to the jury, and it should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the court. Your function is to weigh the evidence in the case and to determine, solely upon the basis of the evidence, whether or not the defendant is guilty beyond a reasonable doubt of each crime charged in the indictment.

## Authority

Adapted from jury charge given in United States v. Asaro, 14 CR 26 (ARR) (E.D.N.Y.).

REQUEST NO. 22

<u>EVIDENCE OBTAINED PURSUANT TO LAWFUL PROCEDURES</u>

You have heard evidence in the form of video and audio recordings of conversations that were obtained without the knowledge of some or all of the parties to those conversations. You also have seen evidence obtained pursuant to a search of a residence. All of this evidence was obtained lawfully. The use of these procedures to gather evidence is perfectly lawful and the government has the right to use such evidence in this case.

<u>Authority</u>

Adapted from jury charges given in <u>United States v. Moore</u>,
13 CR 487 (CBA) (E.D.N.Y.); <u>United States v. Basciano</u>,
03 CR 929 (NGG) (E.D.N.Y.).

REQUEST NO. 22

<u>TRANSCRIPTS OF RECORDINGS</u>

The government has been permitted to hand out typed documents that it prepared relating to what can be heard on the recordings which have been received in evidence. Those were given to you as an aid or guide to assist you in listening to the recordings. However, they are not in and of themselves evidence. Therefore, when the recordings were played I advised you to listen very carefully to the recordings themselves. You alone should make your own interpretation of what appears on the recordings based on what you heard. If you think you heard something differently than appeared on the transcript then what you heard is controlling.

<u>Authority</u>

Adapted from the jury charge given in <u>United States v. Moore</u>,
13 CR 487 (CBA) (E.D.N.Y.).

REQUEST NO. 23

<u>IMPEACHMENT OF THE DEFENDANT</u>
(If Applicable)

As I have instructed you, the defendant in a criminal case never has any duty or obligation to testify or come forward with any evidence.   This is because the burden of proof beyond a reasonable doubt remains on the government at all times, and the defendant is presumed innocent.

In this case the defendant did testify and he was subject to cross-examination, like any other witness.   You learned during his testimony that the defendant was previously convicted of a crime (or crimes).   This prior conviction was received into evidence for the sole purpose of helping you decide how much of his testimony to believe.   I want to caution you that you may not consider the defendant's prior conviction in any way, except for the limited purpose of helping you decide how much of his testimony to believe and what weight, if any, to give it. You are specifically instructed that you may not consider the defendant's prior conviction as any evidence of his guilt in this case.


<u>Authority</u>

Adapted from Sand, <u>Modern Federal Jury Instructions,</u>
Instruction No. 7-13.

REQUEST NO. 24

SPECIFIC INVESTIGATIVE TECHNIQUES NOT REQUIRED

The law does not require that any particular investigative techniques be used by law enforcement authorities to uncover or prosecute crime. Law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all the evidence presented in the case, the government has proven that the defendant is guilty beyond a reasonable doubt.

Authority

Adapted from the charges given in United States v. Wilson,
08 CR 690 (BMC) (E.D.N.Y.); United States v. Breheney,
94 CR 244 (ILG) (E.D.N.Y.); Sand, Modern Federal Jury Instructions,
Instruction No. 4-4.

<u>CONCLUSION</u>

The United States respectfully requests that the Court include the foregoing charges in its instructions to the jury.

Dated:  Brooklyn, New York
        May 22, 2017

                                        Respectfully submitted,

                                        BRIDGET M. ROHDE
                                        ACTING UNITED STATES ATTORNEY
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Nicole M. Argentieri
Lindsay K. Gerdes
Keith D. Edelman
Assistant United States Attorneys
        (Of Counsel)