1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,      : 17-CR-00127(ARR)
4                                 :
                                  :
5                                 :
        -against-                 : United States Courthouse
6                                 : Brooklyn, New York
                                  :
7                                 :
                                  : Tuesday, June 27, 2017
8  VINCENT ASARO,                 : 10:30 a.m.
                                  :
9          Defendant.             :
                                  :
10 - - - - - - - - - - - - - - X

11          TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
            BEFORE THE HONORABLE ALLYNE R. ROSS
12          UNITED STATES SENIOR DISTRICT JUDGE

13             A P P E A R A N C E S :

14 For the Government:   BRIDGET M. ROHDE, ESQ.
                      Acting United States Attorney
15                    Eastern District of New York
                      271 Cadman Plaza East
16                    Brooklyn, New York 11201
                   BY: NICOLE M. ARGENTIERI, ESQ.
17                    LINDSAY GERDES, ESQ.
                      KEITH DANIEL EDELMAN, ESQ.
18
                      Assistant United States Attorneys
19
    For the Defendant:   ELIZABETH E. MACEDONIO, P.C.
20                    40 Fulton Street
                      23rd Floor
21                    New York, New York 10038
                   BY:ELIZABETH E. MACEDONIO, ESQ.
22

23 Court Reporter:  Stacy A. Mace, RMR, CRR
                    Official Court Reporter
24                  E-mail:  SMaceRPR@gmail.com

25 Proceedings recorded by computerized stenography.  Transcript
   produced by Computer-aided Transcription.

Proceedings                                              2

1                        (In open court.)

2              THE COURTROOM DEPUTY:  United States of America

3     against Vincent Asaro, docket number CR-17-127.

4              Counsel, please state your name for the record.

5              MS. ARGENTIERI:  Nicole Argentieri and Keith Edelman

6     for the United States.  Good morning, Judge.

7              THE COURT:  Good morning.

8              MS. MACEDONIO:  Good morning, Your Honor.  Elizabeth

9     Macedonio for Mr. Asaro.

10             THE COURT:  Good morning.

11             THE COURTROOM DEPUTY:  Do you want to state your

12    name for the record?

13             MR. EPSTEIN:  Yes.  Lloyd Epstein, Your Honor.  I

14    think the Court asked me to come here to speak with Mr. Asaro.

15             THE COURT:  I did.

16             MR. EPSTEIN:  I spoke to him already and I am

17    prepared to place on the record the content of our

18    conversation.

19             THE COURT:  Okay.  I think we are going to give him

20    another opportunity to talk to you after I speak with him.

21             MR. EPSTEIN:  Okay.

22             THE COURT:  Well, let me ask you this:  Is it

23    Mr. Asaro's view that he would like to continue to be

24    represented by Ms. Macedonio at this point in time?

25             MR. EPSTEIN:  Yes.

Proceedings                                  3

1              THE COURT:  Okay.

2              Mr. Asaro.

3              THE DEFENDANT:  Yes.

4              THE COURT:  Could we push you close to a microphone

5    so I could hear everything you say?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Okay.  Now, I know that Ms. Macedonio

8    has been representing you in this proceeding, and I gather

9    that you wish to continue to have her represent you.

10             As I believe you already know, Ms. Macedonio is also

11   representing Ronald Giallanzo who is currently being

12   prosecuted in this court in another proceeding before another

13   judge.  According to the government's charges, both you and

14   Mr. Giallanzo are members of the Bonanno organized crime

15   family and Mr. Giallanzo is also a blood relative.  You are

16   his uncle and he is your nephew, as I understand it.

17             Now, because Ms. Macedonio represents Mr. Giallanzo,

18   she owes him a duty of loyalty.  As a result of that duty of

19   loyalty, she may not be able to do what is in your best

20   interest in the case before me.  This means that she has, at

21   least, a potential and, quite possibly, an actual conflict of

22   interest in her representation of you in this proceeding

23   before me.

24             I want you to know that you have a right to counsel

25   who is free from any possible conflict of interest, who will

Proceedings                                              4

1    see to it that your interests and only your interests are

2    protected.  So to help you understand the importance of this

3    right, I have asked you already to consult with independent

4    counsel, Mr. Epstein, and I am going to ask you to do that

5    again after I have spoken with you so that you can reach an

6    informed decision about how you want to proceed in this case.

7              I also want to make clear to you that in my view a

8    defendant is always better off represented by counsel who is

9    wholly independent of anyone with whom there may be a conflict

10   of interest.  And obviously, if you chose to do that, I would

11   appoint another attorney to represent you in this case.

12             So what I am going to do now is tell you a little

13   bit about some of the risks that are likely to come up when

14   you are represented by a lawyer who, like Ms. Macedonio, has

15   divided loyalties because of other representation.  I cannot

16   see what all of those risks are, no one can, but I will tell

17   you at least one major one that I am cognizant of.  This is a

18   very serious matter for you.  If you do not understand me or

19   if you have any doubt at all as to what I mean, I want you to

20   stop me and I will reword or express myself differently until

21   you understand everything that I say.  All right?

22             THE DEFENDANT:  Okay.

23             THE COURT:  And then after I am finished, I will

24   give you some time to go over in your own mind what I have

25   spoken about and to talk further with Mr. Epstein.  And then

Proceedings                                                5

1   after you have had plenty of time to consider, and only when

2   you tell me you are ready, I will ask you to tell me what your

3   decision is.  When you do that, I will ask you to tell me in

4   your own words what you understand the potential conflict of

5   interest to be if you have Ms. Macedonio continue to represent

6   you in this proceeding.

7           And then if you decide that despite that you wish to

8   run that risk and other potential risks and you want to give

9   up your right to a lawyer who is under no conflict of

10  interest, you may do that provided that I am satisfied that

11  you are acting of your own free will, without pressure or

12  coercion by anyone, and that you have made a knowing and

13  intelligent decision.  All right?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Dennis, would you please swear

16  Mr. Asaro?

17          (Defendant sworn.)

18          THE COURTROOM DEPUTY:  Please state your name for

19  the record?

20          THE DEFENDANT:  Vincent Asaro.

21          THE COURTROOM DEPUTY:  Thank you.

22          THE COURT:  Mr. Asaro, do you understand that having

23  been sworn, now that you are under oath, your answers to my

24  questions would be subject to another prosecution for perjury

25  or false statement if you did not answer them truthfully?

```
                          Proceedings                          6
```

1           THE DEFENDANT:  Right.

2           THE COURT:  Okay.  How old are you?

3           THE DEFENDANT:  82.

4           THE COURT:  Okay.  And how far did you go in school?

5           THE DEFENDANT:  I quit when I was 16.

6           THE COURT:  Okay, so you were in high school?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  Had you had about a year of high

9   school?

10          THE DEFENDANT:  Excuse me, ma'am?

11          THE COURT:  Did you complete a year of high school

12  or not yet?

13          THE DEFENDANT:  It's so many years ago, I'm not --

14          THE COURT:  I understand.

15          In the last twenty-four hours have you taken any

16  drugs or medicine or pills of any kind or drunk any alcoholic

17  beverage?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  Okay.  And what have you taken?

20          THE DEFENDANT:  Metoprolol -- I take a lot of drugs,

21  Your Honor.  I can't remember.  Bis -- Bisoprolol for the

22  heart.

23          THE COURT:  Right.

24          THE DEFENDANT:  Liver disease -- I take about 10, 12

25  pills a day.

Proceedings                                            7

1          THE COURT:  Okay.  Let me ask you this:  Are either

2     the side effects of those pills or the effects of the ailments

3     that the pills are used to treat in any way affecting your

4     ability to understand what is going on in this proceeding or

5     to make up your mind about what you want to do?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Okay.

8          Are you under treatment by a doctor or a

9     psychiatrist?

10         THE DEFENDANT:  Well, just the medication that I am

11    taking.

12         THE COURT:  Okay, so just a physician, not a

13    psychiatrist?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  And it is the physician who has

16    prescribed the medication that you have told us about?

17         THE DEFENDANT:  It was my heart doctor.  I had two

18    triple bypasses.

19         THE COURT:  Right, okay.  And I think you told us

20    that your physical conditions are not interfering with your

21    ability to understand or your judgment?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  Okay.  Is your mind clear now?

24         THE DEFENDANT:  Excuse me?

25         THE COURT:  I'm sorry, is your mind clear now?

1        THE DEFENDANT:  Yes, yes.

2        THE COURT:  You you understand what is going on in

3   this proceeding?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Now, I know you have had some prior

6   experience with the criminal justice system, is that correct?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  I know there was a proceeding before me.

9        Have there been other proceedings where you have

10  either been a defendant or a witness?

11       THE DEFENDANT:  In years -- years ago?

12       THE COURT:  Years ago?

13       THE DEFENDANT:  Yeah.

14       THE COURT:  Okay.  Has anyone ever made any promise

15  or threat to you that has influenced you in your decision to

16  have Ms. Macedonio represent you in this case?

17       THE DEFENDANT:  No, Your Honor.

18       THE COURT:  Okay.

19       Ms. Macedonio.

20       MS. MACEDONIO:  Yes, Your Honor.

21       THE COURT:  Did you speak with your client regarding

22  his waiver of right to conflict-free counsel?

23       MS. MACEDONIO:  I have, Your Honor.

24       THE COURT:  Okay.  Have you done that on a number of

25  occasions?

Proceedings                                                    9

1          MS. MACEDONIO:  No, it hasn't been raised until most

2     recently, but I have spoken to him about it.

3          THE COURT:  Have you spoken to him thoroughly?

4          MS. MACEDONIO:  Yes.

5          THE COURT:  Are you satisfied that he understands

6     it?

7          MS. MACEDONIO:  Yes, I am.

8          THE COURT:  Okay.  And what is your view with

9     respect to whether or not there actually exists a conflict of

10    interest as a result of your representation of Mr. Giallanzo?

11         MS. MACEDONIO:  I do not believe there is any

12    conflict of interest that is the result of my representation

13    of Mr. Giallanzo.

14         THE COURT:  Okay.

15         Mr. Asaro, now I am going to tell you about the risk

16    that I think that you are running by having Ms. Macedonio

17    represent you.  I cannot really fully foresee all the risks or

18    problems that could arise, nobody can do that, but you should

19    understand that you may be inviting dangers that no one can

20    anticipate at this time and no one can tell you about at this

21    time.

22         As I explained, Ms. Macedonio, as Mr. Giallanzo's

23    lawyer, owes a duty of loyalty to him and this includes an

24    obligation to do nothing at all that would harm or incriminate

25    him or cast suspicion on him, whether or not refraining from

1    doing that might be harmful to you.

2           Do you understand that?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Okay.  For example, it is possible that

5    it may be in your best interest to cooperate with the

6    government against Mr. Giallanzo in his proceeding in hopes of

7    securing a sentencing benefit in your case.

8           Do you understand that?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Okay.  But because Ms. Macedonio

11   represents Mr. Giallanzo, she would be prevented from seeking

12   to persuade you to do so because your cooperation, which may

13   be in your best interest, would be harmful to the interests of

14   Mr. Giallanzo.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  She actually would be ethically barred

18   from trying to persuade you to pursue such a strategy.

19          Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  And do you understand that what I

22   have just said is strictly by way of example, other things

23   could well come up that would make it much better for you if

24   you had a lawyer who has solely your interests in mind?

25          THE DEFENDANT:  Yes, I understand.

```
                      Proceedings                    11

 1          THE COURT:  Okay.  Have you fully understood
 2   everything that I have said?
 3          THE DEFENDANT:  Yes, Your Honor.
 4          THE COURT:  Okay.  Do you understand that you may be
 5   running a serious risk by continuing with her representation?
 6          THE DEFENDANT:  Yes, I understand.
 7          THE COURT:  Okay.  And do you understand that if you
 8   choose to continue to have her represent you, you cannot
 9   complain about it later, you could not argue that
10   Ms. Macedonio failed to provide you with effective assistance
11   of counsel in your case because she labored under the conflict
12   of interest?  Do you understand that?
13          THE DEFENDANT:  I understand.
14          THE COURT:  Do you have any questions at all that
15   you want to ask me?
16          THE DEFENDANT:  No, Your Honor.
17          THE COURT:  Okay.  So I want you to think seriously
18   about what I have just said.  Speak further with Mr. Epstein
19   and discuss all of that again with him, and when you have done
20   that and when you have made up your mind and you are ready to
21   tell me what your decision is, we will resume this proceeding
22   and I will ask you to tell me.
23          But, again, remember I am going to ask you to
24   explain in your own words what type of risk you think you may
25   be running by having an attorney who is saddled by the
```

```
                        Proceedings                    12
```

1    conflict of dual representation.  Okay?

2              THE DEFENDANT:  Okay.

3              THE COURT:  So, Mr. Epstein, I do not know if you

4    want to go in the back.

5              MR. EPSTEIN:  Yes, I think that is probably the

6    best.

7              THE COURT:  Go ahead, we will wait.  And whatever

8    time you want, you just let us know.

9              (Mr. Epstein and the defendant exit the courtroom.)

10             (Pause in the proceedings.)

11             MR. EPSTEIN:  I think we're ready.

12             THE COURT:  Okay.

13             (Defendant re-enters the courtroom.)

14             THE COURT:  Mr. Asaro, have you had a full

15   opportunity to discuss with Mr. Epstein what you want to do in

16   this case with respect to representation?

17             THE DEFENDANT:  Yes, I have, Your Honor.

18             THE COURT:  Okay.

19             Mr. Epstein, are you satisfied that Mr. Asaro fully

20   understands the situation?

21             MR. EPSTEIN:  Yes.

22             THE COURT:  And, Mr. Asaro, what is it that you want

23   to do?

24             THE DEFENDANT:  I want to stay with Ms. Macedonio.

25   I've used her before.  I was more than satisfied with her

Proceedings                                    13

1    performance, and I feel she has the best interests at heart

2    for me.

3                Also I'd like to say, Your Honor, I would never

4    cooperate, not only against my nephew.  I would never

5    cooperate against anyone.  That's it.

6                THE COURT:  Okay.  And I take it that that's why you

7    think that, for example, the potential danger that I expressed

8    to you, that you are not in any way affected by that by

9    continuing to have Ms. Macedonio represent you?

10               THE DEFENDANT:  Right.

11               THE COURT:  Okay.

12               Well, I make a finding that Mr. Asaro's waiver of

13   conflict-free counsel is knowing and voluntary and

14   intelligent, and I will accept that waiver.

15               THE DEFENDANT:  Thank you, Your Honor.

16               THE COURT:  Let me just ask, Ms. Argentieri, is

17   there anything that I neglected in that?

18               MS. ARGENTIERI:  No, Judge.

19               THE COURT:  Okay.

20               Ms. Macedonio, what does your client wish to do?

21               MS. MACEDONIO:  My client wishes to --

22               THE COURT:  Thank you very much for your service,

23   Mr. Epstein.

24               MR. EPSTEIN:  You're welcome.

25               (Lloyd Epstein, Esq. exits the courtroom.)

```
                      Proceedings                   14
```

1      MS. MACEDONIO:  -- withdraw his previous plea of not

2  guilty and enter guilty pursuant to a written plea agreement

3  with the government.

4      THE COURT:  Okay.

5      Mr. Asaro --

6      THE DEFENDANT:  Yes.

7      THE COURT:  -- before accepting your waiver of

8  indictment and guilty plea, there are many questions that I

9  have to ask you and many things that I have to explain to you.

10  It is very important that you understand everything that I ask

11  and everything I explain.  So if there is anything at all that

12  you do not fully understand, just stop me and I will express

13  myself differently until you do understand it.

14      All right?

15      THE DEFENDANT:  Yes.

16      THE COURT:  Dennis, would you please swear

17  Mr. Asaro?

18      THE COURTROOM DEPUTY:  Yes.

19      (Defendant sworn.)

20      THE COURTROOM DEPUTY:  Please state your name for

21  the record.

22      THE DEFENDANT:  Vincent Asaro.

23      THE COURTROOM DEPUTY:  Thank you.

24      THE COURT:  Again, Mr. Asaro, do you understand that

25  having been sworn, now that you are under oath, your answers

Proceedings                                    15

1   would be subject to another prosecution for perjury to a false

2   statement if you did not answer truthfully?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  Okay.  Now, I believe you told me you

5   were 82 years old, is that correct?

6           THE DEFENDANT:  82, yes.

7           THE COURT:  82, okay.  And we have discussed your

8   schooling, that you left school at approximately the age of

9   16?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  We have also discussed the fact

12  that you are on a number of medications for a number of health

13  problems, and let me simply find out, again, from you, are

14  either any of the medications that you are taking or the side

15  effects from those medications or the underlying physical

16  conditions that have caused you to take those medications

17  affected your ability to understand the proceeding or your

18  ability to make a choice about how you want to proceed in the

19  proceeding?

20          THE DEFENDANT:  Yes, yes.

21          THE COURT:  Have they affected it?

22          THE DEFENDANT:  No, no.

23          THE COURT:  Oh, okay.

24          All right, and apart from those medications you have

25  not had any alcoholic beverages or narcotic drugs, is that

```
                    Proceedings                    16
```

1    right?

2            THE DEFENDANT:  No.

3            THE COURT:  Have you ever been hospitalized or

4    treated for narcotic addiction?

5            THE DEFENDANT:  When I was 20, 21 I was in

6    Lexington, Kentucky.

7            THE COURT:  And did you complete that program?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Did you overcome the addiction?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  Are you in any way feeling the effects

12   of that addiction now?

13           THE DEFENDANT:  No.

14           THE COURT:  Okay.  Is your mind clear?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Do you understand what is going on?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Have you reviewed the charges in the

19   Superseding Information that the United States Attorney

20   proposes to file against you in this case?

21           THE DEFENDANT:  Yes, I have.

22           THE COURT:  Did you discuss it with Ms. Macedonio?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand it?

25           THE DEFENDANT:  Yes.

Proceedings                                    17

1          THE COURT:  Okay.  I am going to go through it with

2   you again right now.

3          THE DEFENDANT:  Yes.

4          THE COURT:  If you have any question as to what any

5   aspect of it means, I want you to ask me or ask Ms. Macedonio.

6   All right?

7          THE DEFENDANT:  Yes.

8          THE COURT:  It charges that between approximately

9   April 1st and April 4th of 2012 in this district and elsewhere

10  you, together with others, knowingly and intentionally used

11  one or more facilities in interstate commerce with the intent

12  to promote or facilitate the promotion and carrying on of an

13  unlawful activity; and that that unlawful activity was arson

14  in violation of New York State law; and after you did that you

15  performed and attempted to perform a crime of violence,

16  specifically arson affecting interstate commerce in violation

17  of federal law.

18          Do you understand that charge?

19          THE DEFENDANT:  Yes, Your Honor.  The only -- the

20  only question I have, it was one other person.  There weren't

21  others.

22          THE COURT:  Okay.  But it was one other person?

23          THE DEFENDANT:  One other person, right.

24          THE COURT:  Okay.  Right now we are just

25  ascertaining that you understand what the charge is.

Proceedings                                                      18

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Do you understand that you have

3    the right under the Constitution of the United States to be

4    charged by an Indictment by a grand jury?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you understand that instead of an

7    Indictment, the United States Attorney proposes to bring this

8    charge against you simply by filing this piece of paper that

9    is called a Superseding Information with the Court, which

10   contains one charge, which is the charge that I just described

11   to you?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Okay.  Do you understand that unless you

14   gave up your right to be indicted by a grand jury, you could

15   not be charged with this crime because it is a felony offense,

16   unless a grand jury determined that there was probable cause

17   to believe that you committed this crime?  Do you understand

18   that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Okay.  Do you understand that a grand

21   jury is composed of, at least, 16, but not more than 23

22   persons and that, at least, 12 grand jurors would have to

23   determine that there was probable cause to believe that you

24   committed this crime before you could be indicted for this

25   crime?

Proceedings                                    19

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Do you understand that if the

3     prosecutor presented the case to the grand jury, the grand

4     jury might or might not indict you?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  And do you understand that if you

7     give up your right to indictment by a grand jury, this

8     prosecution will proceed against you simply by virtue of the

9     prosecutor filing this piece of paper, even though you had

10    never been indicted?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Okay.  Have you discussed the matter of

13    waiving your right to indictment by the grand jury with

14    Ms. Macedonio?

15         THE DEFENDANT:  Yes, I have.

16         THE COURT:  Do you understand that right?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Have any threats or promises been made

19    to induce you to give up that right?

20         THE DEFENDANT:  No.

21         THE COURT:  Do you want to give up that right and

22    proceed instead on this Information?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Okay.

25         Ms. Macedonio, do you know of any reason why your

Proceedings                                   20

1    client should not waive indictment?

2              MS. MACEDONIO:  I do not.

3              THE COURT:  Okay.  Have you an executed Waiver of

4    Indictment form down there?

5              MS. MACEDONIO:  I think I handed it to you.

6              THE COURT:  Oh, it is back in front of me, sorry.

7              Okay, I am going to hand down a Waiver of

8    Indictment.

9              Mr. Asaro, is that your signature on the Waiver of

10   Indictment?

11             THE DEFENDANT:  Yes, it is, Your Honor.

12             THE COURT:  Okay.  Before you signed it, did you

13   read it?  Did you read the document?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did you discuss it with Ms. Macedonio?

16             THE DEFENDANT:  Yes, I have.

17             THE COURT:  Do you understand it?

18             THE DEFENDANT:  Yes.

19             THE COURT:  The record should reflect that

20   Ms. Macedonio has also executed the waiver and I am witnessing

21   it and I make a finding that the waiver is knowingly and

22   intelligently and voluntarily made.

23             Ms. Macedonio, have you discussed the matter of

24   pleading guilty thoroughly with your client?

25             MS. MACEDONIO:  I have, Your Honor.

```
                          Proceedings                    21
```

 1              THE COURT:  Does he understand the rights that he

 2    would be waiving by pleading guilty?

 3              MS. MACEDONIO:  Yes, he does.

 4              THE COURT:  Is he capable of understanding the

 5    nature of the proceedings?

 6              MS. MACEDONIO:  Yes, he is.

 7              THE COURT:  Do you have any doubt as to his

 8    competence to plead at this time?

 9              MS. MACEDONIO:  No, I don't.

10              THE COURT:  Have you advised him of the maximum

11    sentence and fine that may be imposed and discussed with him

12    the advisory sentencing guidelines and the other statutory

13    sentencing factors?

14              MS. MACEDONIO:  I have, Your Honor.

15              THE COURT:  Okay.

16              Mr. Asaro, have you had plenty of time to discuss

17    your case with Ms. Macedonio?

18              THE DEFENDANT:  Yes, I have.

19              THE COURT:  Okay.  And are you satisfied to have her

20    represent you in this proceeding?

21              THE DEFENDANT:  Yes, I am.

22              THE COURT:  Now, we have already reviewed the

23    Information that sets forth the charge against you, and as I

24    recall you fully understood the charge, is that correct?

25              THE DEFENDANT:  Yes.

Proceedings                                                22

 1          THE COURT:  Okay.  Do you understand that you have

 2   the right to plead not guilty to that charge?

 3          THE DEFENDANT:  Yes, I do.

 4          THE COURT:  And if you did, under the Constitution

 5   and under the laws of the United States you would be entitled

 6   to a speedy and public trial by a jury with the assistance of

 7   your attorney, Ms. Macedonio.

 8          Do you understand that?

 9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  And you would be entitled to have

11   her assistance throughout every aspect of the criminal

12   proceeding against you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  At a trial, if you chose to go to

15   trial, you would be presumed to be innocent and the Government

16   would have to overcome that presumption and prove you guilty

17   by competent evidence beyond a reasonable doubt.  You would

18   not have to prove that you were innocent.  If the Government

19   were to fail to prove you guilty beyond a reasonable doubt,

20   the jury would have the duty to find you not guilty.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  Okay.  Now in the course of the trial,

24   the witnesses for the Government would have to come into court

25   and testify in your presence.  Ms. Macedonio would have the

Proceedings                                          23

1   right and opportunity to cross-examine the Government's

2   witnesses, to object to any evidence the Government offered,

3   and to offer evidence on your behalf.  And in that connection

4   she would have the right to compel the attendance of witnesses

5   to testify on your behalf.

6              Do you understand all of that?

7              THE DEFENDANT:  Yes, I understand.

8              THE COURT:  Okay.  At a trial, while you would have

9   the right to testify if you chose to do so, you could not be

10  required to testify.  Under the Constitution of the United

11  States you cannot be compelled to incriminate yourself.  You

12  cannot be required to say anything that would in any way

13  indicate your guilt of the crime with which you are charged.

14  If you chose not to testify, I would instruct the jury that

15  they could not hold that against you in any way.

16             Do you understand that?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Okay.  Now, if you plead guilty and your

19  guilty plea is accepted, you are going to be giving up your

20  constitutional right to a trial and all of the other rights

21  that I just discussed.  There would be no further trial of any

22  kind and no right to appeal from a judgment of guilty.  I

23  would simply enter a judgment of guilty on the basis of your

24  guilty plea.

25             Do you understand that?

Proceedings                                            24

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Also if you plead guilty, I am going to

3     have to ask you questions about what it was that you did in

4     order to satisfy myself that you actually are guilty of the

5     crime to which you seek to plead guilty.  You will have to

6     answer my questions and acknowledge your guilt.  And in doing

7     that, you are going to be giving up one of the rights that I

8     just described, which is the right not to say anything that

9     would in any way indicate your guilt.

10          Do you understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  Are you willing to give up your

13    right to a trial and all the other rights that I have just

14    described?

15          THE DEFENDANT:  Yes.

16          (Pause.)

17          THE COURT:  Okay, turning to the last page of your

18    agreement with the government, which is Government Exhibit

19    Number 1, is that your signature on the agreement?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Okay.  Before you signed it, did you

22    read it?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did you discuss it with Ms. Macedonio?

25          THE DEFENDANT:  Yes.

Proceedings                                    25

1         THE COURT:  Do you understand it?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  Is there anything at all in the entire

4    written agreement that you do not fully understand?

5         THE DEFENDANT:  No.

6         (Lindsay Gerdes, Esq. entered the courtroom.)

7         THE COURT:  Do you understand that that written

8    agreement sets forth your whole agreement with the government

9    relating to your guilty plea in this case?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Okay.  Do you know the longest prison

12   term that could be imposed upon your guilty plea under the

13   statute?

14        THE DEFENDANT:  Twenty years.

15        THE COURT:  That is right.

16        Do you understand that you would also be subject to

17   a term of supervised release of up to three years?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  Do you know what a term of supervised

20   release is?

21        THE DEFENDANT:  Yes.

22        THE COURT:  So you understand that is a period of

23   time that you serve after you are released from prison; you

24   are not in prison, but there are many restrictions that are

25   placed on your liberty, so many I cannot not even begin to

Proceedings                                              26

1    review all of them for you now?

2                THE DEFENDANT:  I understand.

3                THE COURT:  If you were to breach any of your

4    conditions of supervised release while you were out on

5    supervised release, you could be sent back to prison for up to

6    two years without any credit for any of the time that you may

7    have spent out on supervised release.

8                THE DEFENDANT:  I understand.

9                THE COURT:  Okay.  Do you understand that under the

10   statute you could be fined up to $250,000?

11               THE DEFENDANT:  Yes, Your Honor.

12               THE COURT:  Okay.  Do you understand that you will

13   be required to make restitution in the full amount of each

14   victim's losses as I determine them?

15               THE DEFENDANT:  Yes.

16               THE COURT:  Okay.

17               Finally, do you understand that I must impose a

18   special assessment, which is like a fine, of $100?

19               THE DEFENDANT:  Yes.

20               THE COURT:  Okay.

21               Now, the United States Sentencing Commission has

22   issued advisory sentencing guidelines that I must consider,

23   along with a great number of other statutory sentencing

24   factors in determining a sentence.

25               Have you and Ms. Macedonio discussed how all of

Proceedings                                    27

1    these matters might affect your sentence?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that I am not going to

4    be able to determine your sentence until after the Probation

5    Department has prepared a pre-sentence report and you and

6    Ms. Macedonio and the government had an opportunity to review

7    the report and object to any of the findings made by the

8    probation officer?  Do you understand that?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  Do you understand that if you are

11   sentenced to a prison term, you will be required to spend the

12   entire period of that prison term in prison?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Okay.

15             Ms. Argentieri --

16             MS. MACEDONIO:  Your Honor --

17             THE COURT:  -- can you estimate for me --

18             MS. MACEDONIO:  Your Honor, let me just clarify the

19   last point.  I understand what the Court is trying to express,

20   that there is no parole in the federal system and, therefore,

21   he would be required to serve his prison term, but there would

22   also be certain deductions for good time or he could be

23   designated to a halfway house at some point?

24             THE COURT:  But I do not know that any of those

25   things are going to happen.

Proceedings                    28

1        MS. MACEDONIO:  Correct.

2        THE COURT:  I do not know if he is going to get good

3   time or I do not know if they will designate him to a halfway

4   house.

5        MS. MACEDONIO:  Understood.

6        THE COURT:  So that is why he has to be prepared

7   that the full-time could be prison time.

8        MS. MACEDONIO:  May I have a moment, Your Honor?

9        THE COURT:  Yes.

10       (Ms. Macedonio confers with the defendant.)

11       MS. MACEDONIO:  Thank you, Your Honor.

12       THE COURT:  Okay.

13       Ms. Argentieri, can you estimate for me the

14  anticipated advisory guideline range in the case?

15       MS. ARGENTIERI:  Sure, Judge.  As set out in the

16  agreement, we think that he is at a base offense level of 20

17  for the arson and travel act; with an aggravating role

18  adjustment of 2 and an impeding administration of justice

19  enhancement of 2 points, that puts him at a 24.  Less 3 points

20  for acceptance of responsibility, which ends up being a

21  guidelines range of 41 to 51 months.

22       MS. MACEDONIO:  Your Honor, if I may add, the

23  agreement that we have come to with the government does not

24  include stipulation to the guideline calculation.  The parties

25  are not stipulating to that.  That is simply the government's

Proceedings                                    29

1    estimate as to what they believe.

2         THE COURT:  That is fine.  That is fine.  In fact,

3    Mr. Asaro, it is an estimate.  The government is guessing.

4    They could be wrong, but it could turn out that the advisory

5    guideline that applies in your case is even higher than what

6    the government is now estimating it will be.  And it could

7    turn out that because of all those other statutory sentencing

8    factors I might choose to impose a sentence that is more

9    severe than the one called for by the advisory sentencing

10   guidelines; and if any of those things were to happen, you

11   would not be permitted to withdraw your guilty plea simply

12   because no one could tell you in advance what your sentence

13   would be.

14        Do you understand that?

15        (Ms. Macedonio confers with the defendant.)

16        THE DEFENDANT:  Yes, Your Honor.

17        THE COURT:  Okay.  And do you understand that in

18   paragraph four of the agreement you have agreed, among other

19   things, not to file an appeal or otherwise challenge your

20   conviction or sentence by habeas corpus petition or any other

21   provision of law if I impose a prison term of 46 months or

22   less?  Do you understand that?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  And do you also understand that the

25   government's agreement is conditioned upon the entry of guilty

Proceedings                                          30

1   pleas and the acceptance of those pleas by John Gotti, as well

2   as Matthew Rullan; and if not everyone does that or if any of

3   the defendants subsequently seek to withdraw his guilty plea,

4   the United States Attorney's office has the sole discretion to

5   elect whether or not to void any or all of the pleas covered

6   by the agreements and proceed to trial?  Do you understand

7   that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Okay.  And when that happens no

10  defendant is going to have the right to withdraw his plea in

11  any of those circumstances, it is just going to be up to the

12  government as to what it wishes to do.

13           THE DEFENDANT:  Yes.

14           THE COURT:  Okay.

15           Anything else?

16           MS. ARGENTIERI:  Yes, Judge.  Just two provisions I

17  wanted to highlight.  Number one, the defendant is also

18  waiving any applicable statute of limitation --

19           THE COURT:  Yes.

20           MS. ARGENTIERI:  -- by pleading to this Information.

21  And number two, in paragraph two the defendant is agreeing to

22  waive any challenge under Johnson or its progeny that arson is

23  a crime of violence.

24           THE COURT:  Okay.

25           MS. ARGENTIERI:  And further, he is agreeing that if

Proceedings                              31

1   he does challenge his conviction, any statement that he makes

2   at this proceeding may be used against him at trial.

3              THE COURT:  Okay.

4              Let's go through those one at a time, Mr. Asaro.  Do

5   you know what the statute of limitations is?

6              THE DEFENDANT:  (No response.)

7              THE COURT:  You know what a statute of limitations

8   is?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that you are giving up

11  your right to assert the statute of limitations as a defense

12  to this charge?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Okay.  Do you understand that the

15  calculation of the sentencing guidelines is affected by

16  whether or not the crime to which you are pleading guilty is,

17  in fact, a crime of violence and that in this agreement you

18  are giving up your right to challenge whether or not the

19  charge arson is a crime of violence?

20             Do you understand that?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  And do you also understand

23  that -- is it the last sentence of the same paragraph,

24  Ms. Argentieri?

25             MS. ARGENTIERI:  Yes, Judge.

Proceedings                                          32

1          THE COURT:  Okay.

2          -- that you have agreed that if you do challenge the

3    validity of your conviction, any statements made at this

4    guilty plea proceeding may be used against you in connection

5    with that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.  Anything else, Ms. Argentieri?

8          MS. ARGENTIERI:  No, Judge.

9          THE COURT:  Okay.

10         Do you have any questions that you want to ask me

11   about the charge against you or your rights or anything

12   relating to this proceeding?

13         THE DEFENDANT:  No.  May I have a moment, Your

14   Honor?  I would like to talk --

15         THE COURT:  Yes, go ahead.

16         (The defendant confers with Ms. Macedonio.)

17         MS. MACEDONIO:  Your Honor, if I might.  As I

18   stated, the parties have not stipulated as to what the

19   guideline calculation is going to be.

20         THE COURT:  Right.

21         MS. MACEDONIO:  And so what I have explained to

22   Mr. Asaro is that until the Court receives the probation

23   report and all the arguments from the parties, that Your Honor

24   will not be able to make your own calculation as to what the

25   appropriate guideline range would be --

Proceedings                                          33

1              THE COURT:  I hope I just said that.

2              MS. MACEDONIO:  I just want to make sure his

3     concerns are addressed.

4              -- and that, thereafter, the Court would address the

5     3553(a) factors and then, ultimately, determine what the

6     appropriate sentence was going to be.  So when Mr. Asaro asks

7     me what is the absolute calculation of his guidelines I can't

8     give him an answer to that --

9              THE COURT:  Absolutely.

10             MS. MACEDONIO:  -- because there are things that we

11    are still litigating.

12             THE COURT:  All of that really is going to be open

13    until the time of your sentencing.

14             Do you understand?

15             THE DEFENDANT:  Okay, Your Honor, thank you.

16             THE COURT:  Are you ready to enter a plea?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Ms. Macedonio, do you know of any reason

19    why your client should not plead guilty to the charge?

20             MS. MACEDONIO:  No, Your Honor, I do not.

21             THE COURT:  Okay.

22             Mr. Asaro, how do you plead to the charge in the

23    Superseding Information, do you plead not guilty or do you

24    plead guilty?

25             THE DEFENDANT:  Guilty, Your Honor.

Proceedings                                                34

1          THE COURT:  Are you making the guilty plea

2     voluntarily and of your own free will?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  Has anyone threatened, forced or coerced

5     you in any way to plead guilty?

6          THE DEFENDANT:  No, Your Honor.

7          THE COURT:  Other than the agreements with the

8     government that are set forth in this written agreement that

9     has been marked as Government Exhibit Number 1 in your case,

10    has anyone made any promise to you that has caused you to

11    plead guilty?

12         THE DEFENDANT:  No.

13         THE COURT:  Has anyone made any promise to you as to

14    what your sentence will be?

15         THE DEFENDANT:  No.

16         THE COURT:  Did you on sometime between April 1st

17    and 4th of 2012 in this district, that is the Eastern District

18    of New York, and elsewhere, together with another person,

19    knowingly and intentionally use what is called in the

20    Information as a facility in interstate commerce, but probably

21    turns out to be a telephone, intending to promote and

22    facilitate the carrying on of an unlawful activity,

23    specifically arson in violation of New York law; and

24    thereafter, perform and attempt to perform a crime of

25    violence, which is arson, affecting interstate commerce in

Proceedings                                    35

1   violation of federal law?  Did you do that?

2              THE DEFENDANT:  Hold on a minute.

3              THE COURT:  That is fine.

4              (Defendant confers with Ms. Macedonio.)

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Okay.  You tell me in your own words

7   what you did that makes you think you are guilty to this.

8              THE DEFENDANT:  In or about April --

9              THE COURT:  Would you speak directly into the

10  microphone?

11             THE DEFENDANT:  Oh.

12             THE COURT:  Thank you.

13             THE DEFENDANT:  In or about April 2012 in Queens,

14  New York I used a phone in interstate commerce to promote an

15  arson.  Thereafter, that arson was performed.  Specifically on

16  April 4th, 2012 another person burned the car at my request to

17  further the arson.

18             The only thing I would like to add to that, Your

19  Honor, is that I don't know the other person.  I never have

20  met him.

21             THE COURT:  But did you make arrangements for that

22  other person to commit the arson?

23             THE DEFENDANT:  No, not with him, only --

24             THE COURT:  Did you ask someone to make arrangements

25  for the other person --

                SAM      OCR      RMR      CRR      RPR

```
                        Proceedings                    36
```

1          THE DEFENDANT:  Yes.

2          THE COURT:  -- to commit the arson?

3          THE DEFENDANT:  Yes.  I didn't, I asked him to take

4   care of it.

5          THE COURT:  You asked another person to take care of

6   it?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And by take care of it, you meant to

9   find someone to commit that particular arson?

10         THE DEFENDANT:  No, Your Honor.  The person that was

11  gonna testify against me --

12         MS. MACEDONIO:  Can I have a moment, Judge?

13         (Ms. Macedonio confers with the defendant.)

14         MS. MACEDONIO:  Judge, go ahead.

15         THE DEFENDANT:  Your Honor, I made arrangements for

16  someone -- with this person to take care of it and it was

17  done.

18         THE COURT:  So you made arrangements with a person

19  to either himself or find someone to commit the arson that you

20  wanted committed and that arson was, in fact, committed?

21         THE DEFENDANT:  I asked one person, him, him to take

22  care of it.

23         THE COURT:  I did not ask how many people you asked.

24         THE DEFENDANT:  Oh, all right.

25         THE COURT:  I want to go through it with you again.

```
                        Proceedings                    37
```

1   THE DEFENDANT:  Okay.

2   THE COURT:  You made arrangements with one person --

3   THE DEFENDANT:  Yes.

4   THE COURT:  -- to commit an arson?

5   THE DEFENDANT:  Yes.

6   THE COURT:  And it was either you made arrangements

7 with that person that he would either commit it himself or

8 find someone else to commit the arson that you wanted to be

9 committed, is that right?

10   THE DEFENDANT:  Yes, Your Honor.

11   THE COURT:  And, in fact, he did?

12   THE DEFENDANT:  Yes.

13   THE COURT:  Someone did commit the arson --

14   THE DEFENDANT:  Yes.

15   THE COURT:  -- that you wanted to be committed?

16   THE DEFENDANT:  Yes.

17   THE COURT:  Okay.

18   Anything further?

19   MS. ARGENTIERI:  Yes, Judge.  Can we have a second?

20   (Pause.)

21   MS. ARGENTIERI:  So, Judge, I think Mr. Asaro

22 already said this in his initial allocution, I just want it to

23 be clear that he used a telephone --

24   THE COURT:  Right.

25   MS. ARGENTIERI:  -- in interstate commerce to

Proceedings                                      38

1    further the arson.

2            THE COURT:  To further the arson.  As I understand

3    it, he used the telephone to contact a particular individual

4    to make arrangements to commit the arson.  Is that right?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Okay.  And the arson was an arson of a

7    motor vehicle?

8            THE DEFENDANT:  Yes, Your Honor.

9            MS. ARGENTIERI:  And I just want to make clear that

10   the car was burned by fire.

11           THE COURT:  Was the car, in fact, burned by fire?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  Anything else?

14           MS. ARGENTIERI:  And, Judge, I don't think that he

15   has to allocute to this, but merely agree that at trial the

16   government would be prepared to show that the vehicle that was

17   burned was in and effecting commerce, it was a leased vehicle?

18           THE COURT:  Based on the information that you have

19   given to me, I find that you are acting voluntarily, that you

20   fully understand your rights and the consequences of your

21   plea, and that there is a factual basis for your plea and I,

22   therefore, accept your guilty plea to the charge in the

23   Superseding Information.

24           THE DEFENDANT:  Thank you are, Your Honor.

25           THE COURTROOM DEPUTY:  Sentencing set for October

Proceedings                                      39

1    24th at 11 a.m.

2          MS. MACEDONIO:  Your Honor, can we ask for an

3    expedited sentencing in this matter?  Nicole?

4          MS. ARGENTIERI:  Yes, agreed.

5          THE COURT:  I do not have any problem with that, it

6    is a question of how quickly the Probation Department can do

7    it.  So we will request the Probation Department to do that

8    and as soon as the report is out.

9          MS. ARGENTIERI:  What was the date that Mr. LaSalle

10   gave?

11         THE COURTROOM DEPUTY:  October 24th at 11 a.m.

12         MS. MACEDONIO:  And will that prompt the Probation

13   Department to prepare --

14         THE COURTROOM DEPUTY:  It is just the control date.

15         MS. MACEDONIO:  Okay.

16         THE COURT:  I do not see any reason why the

17   Probation Department cannot do it with some speed, so --

18         MS. ARGENTIERI:  We are happy to facilitate that on

19   our end if we can.

20         MS. MACEDONIO:  And we will, as well.  Your Honor,

21   may I have a copy of the transcript of today's proceedings?

22         THE COURT:  Yes.

23         MS. MACEDONIO:  Thank you, Judge.

24         THE COURT:  Okay.

25         (Matter adjourned.)