UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA,

          -v-                     Ind. No. 17 Cr. 127 (ARR)

VINCENT ASARO,

                    Defendant.

-------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT
# OF VINCENT ASARO'S APPLICATION FOR
# <u>RELEASE ON BAIL PENDING TRIAL</u>

Elizabeth E. Macedonio, Esq.
40 Fulton Street
23rd Floor
New York, New York 10038
(212) 235-5494
Attorney for Vincent Asaro

## I.      <u>Preliminary Statement</u>

This memorandum is submitted in support of Vincent Asaro's application for pre-trial release on bail. Mr. Asaro offers a significant bail package including multiple suretors willing to post their family homes and sign a two-million-dollar bond. Considering the strong ties between Mr. Asaro and these suretors, many of whom live in New York City, any risk of flight is negligible. Further, Mr. Asaro's advanced age of 82 years, his ailing physical and mental strength, and the serious medical complications he has suffered in the recent past, make pre-trial detention dangerous if not life threatening for Mr. Asaro. Because there are conditions other than incarceration that will ensure Mr. Asaro's appearance and assure the safety of the community, it is respectfully submitted that this Court should grant Mr. Asaro's application for release on bail.

## II.     <u>Procedural History</u>

Vincent Asaro was taken into custody without incident by federal agents on the morning of March 22, 2017.  He is 82 years of age. His arrest was based upon an indictment that was filed in the Eastern District of New York charging him with arson and conspiracy to commit arson in April of 2012.

Mr. Asaro was arraigned on March 22, 2017.  That same day the government filed a memorandum seeking Mr. Asaro's detention. (ECF #5) No bail hearing has

been held on this matter. Rather, Mr. Asaro consented to detention without prejudice to make a future application. As such, a permanent order of detention was entered by Chief Magistrate Judge Roanne L. Mann. (ECF #8).

This memorandum is respectfully submitted in support of Mr. Asaro's application to be released on a combination of conditions that would ensure both the safety of the community and his presence in court.

## III.   Legal Argument

### The Bail Reform Act Favors the Defendant's Release

The Bail Reform Act requires the release of a defendant on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." See 18 U.S.C. § 3142(c)(1)(B). Thus, in seeking the defendant Vincent Asaro's pre-trial detention, the government has overlooked not only the language of the Bail Reform Act which favors release but also prevailing case law which makes clear that "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (internal citations omitted))

Here, the government carries a dual burden. See *Sabhnani*, 493 F.3d at 75. First, it must prove by clear and convincing evidence that the defendant poses a present danger. See 18 U.S.C. §§ 3142(e) and (f); see also *United States v.*

3

*Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).  If it is able to satisfy that burden, the government must then demonstrate that "no condition or combination of conditions" will alleviate the risk. See 18 U.S.C. §§ 3142(e) and (f); *Sabhnani*, 493 F.3d at 75 (citing *Chimurenga*, 760 F.2d at 405).  The government has failed to satisfy both prongs in this case.

To determine whether release is required based upon the presence of sufficient conditions, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g); see also *Sabhnani*, 493 F.3d at 75; *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

An analysis of these factors reveals that the government has not and cannot meet its burden to show that Vincent Asaro presents a present danger to the community that appropriate conditions of release cannot eliminate.

## IV.   **The Bail Package**

Vincent Asaro offers a substantial bail package to guarantee his appearance in court and eliminate any concerns with regard to the safety of the community. Specifically, to ensure compliance with his conditions of release, Mr. Asaro offers a

package of two million dollars to be secured by the homes and other assets of Mr.

Asaro's friends and family members.

The following parties have offered to post their homes in support of bail:

1.    Michele Corollo - Mr. Asaro's long-term companion with whom he lives, has
      been employed at ███████████████ since 1993 earning 56,000.00 dollars
      per year. She will post her home with equity of 420,000.00 dollars.  There is
      no mortgage on this property.

2.    Noreen Asaro - Mr. Asaro's daughter, is employed at ███████████,
      making 26,000.00 annually. She will post her home with equity of 480,000.00
      dollars. There is no mortgage on this property.

3.    Susan Asaro - Mr. Asaro's ex-daughter-in-law, owns her own clothing store,
      earing approximately 25,000.00 dollars annually. She will post her home with
      equity of 317,000.00 dollars.

4.    Lucille Gennaro - Mr. Asaro's life-long friend, is employed at ███████████,
      earning 61,000.00 annually. She will post her home with equity of 225,000.00
      dollars.

     In addition to the owners of the properties set forth above, eight other

individuals are willing to sign a two-million dollar bond on behalf of Vincent Asaro,

as they are completely confident that he presents no danger to the community and

that he will fully abide by his conditions of release. These potential signers include

Mr. Asaro's grandchildren and life-long friends all of whom are gainfully employed.

This significant bond, secured by the properties of loved ones, carries with it great

moral suasion as Mr. Asaro recognizes that these sureties risk losing a great deal –

including their own homes, earnings, and life-savings – if he fails to comply with his

conditions of release. See *United States v. Vaccaro*, 51 F.3d 189 (9th Cir. 1995);
*United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Terrell*,
983 F.2d 653 (5th Cir. 1993); *United States v. Santiago*, 826 F.2d 499 (7th Cir. 1987);
*United States v. Gigante*, 166 F.R.D. 3 (E.D.N.Y. 1996) (Nickerson, J.); *United States
v. Gambino*, 809 F. Supp. 1048 (S.D.N.Y. 1992) (Leisure, J.).

In addition, Mr. Asaro is certainly willing to comply with strict travel limits,
including electronic monitoring and home detention if the Court deems it necessary.
However, Mr. Asaro is a life-long resident of New York City where the vast majority
of his loved ones reside and is not a flight risk. At the age of 82 and in fragile health,
the likelihood of Mr. Asaro fleeing those who provide him with necessary emotional
support and daily assistance is exceedingly low.

Thus, an analysis of each of the statutory factors set forth in § 3142(g), together
with the proffered bail package and proposed conditions of release, demonstrates that
the government cannot meet its burden of proof by clear and convincing evidence
that Mr. Asaro presents a current danger which cannot be ameliorated by any
combination of conditions.

## V.     Vincent Asaro's Background and Heath Issues

Vincent Asaro, now 82 years old, comes before this Court presumptively
innocent and eligible for release on bail.  Mr. Asaro is a lifelong resident of Queens
County. He is unemployed and lives in the home of his long-term companion Michele

Corollo. He has no assets or unexplained wealth. He relies fully on his family for transportation and financial support.

In January of 2014, Mr. Asaro was arrested and charged in this District with a racketeering conspiracy that spanned from 1968 to 2013.  Mr. Asaro did not seek bail in that case and thus was detained pending trial.  On November 12, 2015, he was acquitted of all charges after a five week trial.[1]  The same group of prosecutors and federal agents have now brought this case.  They once again are relying in part on the same cooperating witness, Gasper Valenti, whose credibility was so clearly rejected by the jury.

In support of its application for detention in the instant matter, the government cites Mr. Asaro's decade's old criminal history with the most recent conviction in 1998, nearly twenty years ago.  There is no indication that Mr. Asaro ever violated the terms of his release in prior cases or that he currently has the means to abscond. Indeed, Mr. Asaro does not even own a vehicle and does not have the means to flee.

In further support of detention, the government advances that Mr. Asaro is currently a powerful member of the Bonanno crime family citing to conversations that took place over five years ago.  This allegation is entirely inaccurate. Both the

---

[1] This Court should not consider the conduct Mr. Asaro was acquitted of in determining whether to grant pre-trial release. The Government has not provided any Second Circuit authority permitting consideration of acquitted conduct in a bail determination. The dicta in *Proudfoot* that the Court could "presumably" consider this conduct is neither governing nor persuasive.

jury verdict in 2015 and the government's recent investigation into the Bonanno crime family certainly establish this fact. Moreover, while the government goes to great pains to cite to case law indicating that members of organized crime should be detained pending trial, there is nothing in the government's detention memorandum that even remotely suggests Mr. Asaro is currently an active member in the Bonanno crime family – nor could there be.

The allegations in this case date back to 2012. Thus, the conduct at issue was before Mr. Asaro's 2014 arrest, before Mr. Asaro's 2015 acquittal and before the sixteen months he spent at liberty without any criminal association with the Bonanno crime family or any allegation of criminal conduct.

Since Mr. Asaro's acquittal in 2015, it is clear that the government has conducted an investigation into the Bonanno crime family. Its investigation resulted in three indictments in this District (17 Cr. 127 (ARR); 17 Cr. 128 (ARR); 17 Cr. 155(DLI)) and the arrest of approximately sixteen individuals. And, while the government has conducted surveillance at Bonanno family gatherings after Mr. Asaro's 2015 acquittal, (*US v. DeSimone* 03 Cr. 1382 (NGG); *US v. Giallanzo*, 06 Cr. 181 (NGG); *US v. Pipitone*, 09 Cr. 672 (NGG)) notably, Mr. Asaro has not been present. His absence at Bonanno gatherings in the wake of his acquittal make it crystal clear that he is not participating in the affairs of the Bonanno family. Rather, the government cites Mr. Asaro's alleged presence at a public restaurant where it

asserts member of the Genovese crime family – not the Bonanno crime family - were gathering in 2015.  Even if this is accurate, no crime is alleged and Mr. Asaro had no restriction prohibiting him from being in a public restaurant.

Mr. Asaro's age and health also warrant bail pending trial and mitigate any danger to the community or risk of flight.  As stated, Mr. Asaro is 82 years old.  He has several serious ailments including hepatitis, liver disease, hypertension, hyperlipidemia, a long history of painful kidney stones with an indication of kidney failure and heart disease. Prior to his 2014 arrest, Mr. Asaro suffered a heart attack and underwent triple bypass surgery. During his incarceration from 2014 to 2015, his health deteriorated rapidly. The lack of proper medical care at the Metropolitan Detention Center ("MDC") where Mr. Asaro is detained has been the subject of an ongoing investigation in this District.  Mr. Asaro's case is a prime example of the lack of proper health care.

In the early morning hours of July 19, 2014, Mr. Asaro was taken from the MDC to the emergency room as he was in extreme pain and was urinating blood. He was told that he had numerous kidney stones that were too large to pass and that he should be seen by a urologist.  Without any further treatment, he was then returned to the MDC. Weeks later, and only after the Court made an inquiry as to when Mr. Asaro would be seen by a doctor, Mr. Asaro was taken to a urologist who again told him that he had several kidney stones that were too large to pass and that he needed

an operation. Once again, he was returned to the MCD.  While at the MDC, Mr. Asaro was forced to choose between taking prescription pain killers, even when he was not in immediate pain, or waiting for the pain to return and then having no relief at all.

Mr. Asaro was not taken to the hospital to remove the stones lodged in his kidney until September 5, 2014.  This action was taken by the staff at the MDC only after the Court made two additional inquiries about Mr. Asaro's medical condition. To add to this traumatic ordeal, Mr. Asaro was unable to communicate with his family for a two-week period while he was in the hospital.  They had no way of knowing if he was alive or if he had suffered surgical complications.

In addition, while last at the MDC, Mr. Asaro consistently complained to the staff of a deep and painful burning sensation in his chest and that his legs were swollen with water and painful to the touch.  Although he repeatedly asked that testing be done to determine the cause of the pain, his requests were ignored.  Upon release, it was learned that Mr. Asaro was suffering from angina, a condition marked by severe pain in the chest caused by an inadequate blood supply to the heart.  In early 2016, Mr. Asaro underwent his second bypass surgery during which multiple stents were placed in his heart. It is only by the grace of god that he did not suffer further complications due to lack of medical care while in custody.

Presently his doctor has advised that Mr. Asaro is suffering from preserved ejection fraction. With preserved ejection fraction, the heart muscle contracts normally sending blood to the body. Thereafter, however, the heart's ventricle does not relax to allow the ventricular to properly fill with a renewed blood supply which the body needs. Thus the amount of blood to the body is less than normal. Preserved ejection fraction is also referred to as diastolic heart failure. A healthy diet and regular exercise are crucial for Mr. Asaro's survival. These are things that he will not get at the MDC.

In the winter months of 2017, Mr. Asaro suffered from such a debilitating strain of the flu that he was homebound for twelve days. He was seen by his doctor on several occasions, and even underwent a chest x-ray to make certain he had not come down with the pneumonia. Currently Mr. Asaro is taking nine different medications, some of them twice a day.

More recently in March of 2017, when Mr. Asaro was celebrating his birthday with friends, he had to be escorted home as he was suffering from stroke like symptoms. It was determined that Mr. Asaro had had a transient ischemic attack ("TIA") which is sometimes referred to as a mini-stroke. A TIA produces similar symptoms to a stroke, but usually only lasts a few minutes and causes no permanent damage. About one in three people who have a transient ischemic attack will eventually have a stroke, with about half occurring within a year after the transient

ischemic attack. Mr. Asaro reports that he has had two of these episodes in the past year. After the episode in March of 2017, Mr. Asaro underwent an MRI which revealed thickening of the brain.  Mr. Asaro also currently suffers from unsteadiness.

On April 12, 2017, Mr. Asaro was placed in administrative detention at the MDC.  On or about April 23, 2017, the undersigned visited with Mr. Asaro in the Special Housing Unit ("SHU").  When Mr. Asaro entered the attorney visiting area he was distraught. He had collapsed in the shower and was unable to get up.  He was not coherent and was unable to effectively communicate with counsel. He clearly had lost a significant amount of weight and reported that he was having pain urinating. Notably, the temperature in the SHU is far below comfortable and the inmates are given little in the way of warm clothing. Upon consistent urging, Mr. Asaro was taken to the nurse and ultimately to the hospital.  He was suffering from dehydration, dangerously high blood pressure and extreme weakness.   All symptoms of heart failure.  While in the hospital, Mr. Asaro was advised that his "heart was leaking."

 He was returned to the MDC and the SHU on April 25, 2017, without any further medical intervention.  Remarkably, since Mr. Asaro was in 24 hour lockdown, if an emergency had occurred, he would have had no assistance whatsoever.  While staff is on the floor, the inmates are routinely ignored.  Had counsel not gone the MDC on this particular day, it is likely that Mr. Asaro would not have received any

medical attention. Mr. Asaro was finally released from the SHU on or about May 2, 2017.

Mr. Asaro is presumed to be innocent. His age and fragile medical condition make his pre-trial incarceration one that he may not survive and therefore certainly mitigate in favor of bail with conditions.

## VI.   **The Charges**

The indictment in this case charges Vincent Asaro with arson and conspiracy to commit arson in April of 2012. According to the government Mr. Asaro became enraged when a driver switched lanes in front of him at a traffic light. In retaliation, Mr. Asaro obtained the driver's address and directed a Bonanno associate to set the driver's car on fire. What is clear from a reading of the government's proffer, is that there is only one person who will be able to state that Mr. Asaro directed that the motorist's car be set on fire. And while the government alleges it has video and audio surveillance to support the charges, to date, this evidence has not been produced.

Upon information and belief, the cooperating witness ("CW") noted in the government's submissions has been involved in a life-time of crime having nothing at all to do with Mr. Asaro. Indeed, the crimes this individual is associated with are the subject of three separate indictments brought this spring in this District dating back well over a decade. The CW's crimes include, but are not limited to murder conspiracy, narcotics distribution, weapons possession, multiple home invasions,

three armed robberies, loansharking, arson, and bank robbery.  The CW has been described as a "one man crime wave."

Simply stated, the strength of the case against Vincent Asaro is based upon the willingness of the trier of fact to find a "one man crime wave" credible. This is hardly a case that should support pre-trial detention, even if he were not an 82 year old man with a variety of life threatening ailments.

## VII.   Evidence of Past Membership in or Association with the Mafia Is Not a Sufficient Basis for Detention

The government proffers no evidence that Vincent Asaro is an active member of the Bonanno crime family.  Rather, the evidence cited by the government is over five years old.

However, even if the government's proffer contained current information, allegations regarding "association" are meaningless, as membership in the Mafia, let alone association with others who are alleged to be members, is not a crime. See *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 683 F.Supp. 1411, 1429 (E.D.N.Y. 1988) ("Congress specifically declined to make mere membership in an organized crime organization a RICO offense."). Thus, it certainly does not establish a clear and convincing basis for detention on the grounds of dangerousness.

Moreover, the Second Circuit has made abundantly clear that a defendant's alleged membership in a criminal enterprise alone – even if his position were high-ranking – is insufficient to warrant detention.  See *United States v. Ciccone*, 312 F.3d 535, 543 (2d Cir. 2002) (Explicitly declining to embrace a *per se* rule of detention for people in the position of boss or acting boss of a crime family)

Accordingly, despite the government's once upon a time theory that Mr. Asaro was an active member of the Bonanno crime family, it fails to proffer clear and convincing evidence that Mr. Asaro is currently a danger to the community thus warranting detention in 2017.

## VIII. The Government Has Failed to Demonstrate that Vincent Asaro Presents a Current Danger that No Conditions of Release Can Mitigate

The government has failed to prove that Mr. Asaro presents a current danger to the safety of others that no conditions of release could mitigate.  Hence, despite the fact that a "crime of violence" is charged, the government has not met its burden to prove by clear and convincing evidence that Mr. Asaro should be detained pending trial. See *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985). Indeed, in *Chimurenga*, the Second Circuit upheld the district court's determination that there existed conditions of release that would reasonably assure the safety of the community and defendant's presence at trial even though the defendant there was charged as the leader of an armed robbery conspiracy, which the court held to be a

crime of violence, and the government's proof of the defendant's participation in the crime included taped conversations where the defendant instructed his co-defendants on how to kill armored truck guards, tapes in which he advised others to cut ties and flee rather than face imprisonment, an arsenal of weapons and physical surveillance linking the defendant to a series of planned violent crimes, including a planned prison escape of others.  See id. at 402-03.

Similarly, conditions exist here, despite the government's allegations of Mr. Asaro's influence in years gone by that would reasonably ensure the safety of others. As noted above, Mr. Asaro is willing to be placed on electronic monitoring if the Court deems it appropriate and necessary.  Unquestionably, then, Mr. Asaro should not be deprived of his liberty pending trial – a time during which he remains presumptively innocent – without a sufficient showing by the government of dangerousness.

Hence, the government's weak proffer utterly fails to rise to the requisite level of proof, and Mr. Asaro's proposed bail package should, most respectfully, be accepted by the Court.

## Conclusion

In this case, rather than the government proving by clear and convincing evidence that he is a danger to the community, Mr. Asaro has clearly and convincingly demonstrated that he poses no threat. The numerous persons who have come forward to sign and collateralize a two million dollar bond on Mr. Asaro's behalf are a true testament to his commitment to face the charges the government has brought.

The government here has simply not demonstrated that Mr. Asaro presents a serious risk of flight or a danger to the community which cannot be eliminated through the proposed conditions of release. Accordingly, we respectfully ask that the Court release Mr. Asaro on a two million dollar bond secured by the properties listed above, and any other conditions the Court deems appropriate.

Dated: New York, New York
     May 11, 2017

Respectfully submitted,

*Elizabeth E. Macedonio*

Elizabeth E. Macedonio, Esq.

*Attorney for the Defendant*
*Vincent Asaro*
